No. 24-30177

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

PHILLIP CALLAIS; LLOYD PRICE; BRUCE ODELL; ELIZABETH ERSOFF; ALBERT CAISSIE; DANIEL WEIR; JOYCE LACOUR; CANDY CARROLL PEAVY; TANYA WHITNEY; MIKE JOHNSON; GROVER JOSEPH REES; ROLFE MCCOLLISTER,
*Plaintiffs-Appellees,*
v.

NANCY LANDRY, In her official capacity as Louisiana Secretary of State,
*Defendant-Appellee,*

STATE OF LOUISIANA,
*Intervenor-Appellee,*

PRESS ROBINSON; EDGAR CAGE; DOROTHY NAIRNE; EDWIN RENE SOULE; ALICE WASHINGTON; CLEE EARNEST LOWE; DAVANTE LEWIS; MARTHA DAVIS; AMBROSE SIMS; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE LOUISIANA STATE CONFERENCE; POWER COALITION FOR EQUITY AND JUSTICE,
*Intervenors-Appellees,*
v.

EDWARD GALMON, SR.; CIARA HART; NORRIS HENDERSON; TRAMELLE HOWARD; ROSS WILLIAMS,
*Movants-Appellants.*

———————————

Appeal from the United States District Court for the Western District of Louisiana
Case No. 3:24-cv-122

———————————

**BRIEF OF PLAINTIFFS-APPELLEES**

———————————

*(Counsel listed on next page)*

Edward D. Greim

Graves Garrett Greim, LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 222-0534
edgreim@gravesgarrett.com
*Attorney for Plaintiffs-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

ii

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:**

1. Philip Callais
2. Lloyd Price
3. Bruce Odell
4. Elizabeth Ersoff
5. Albert Caissie
6. Daniel Weir
7. Joyce Lacour
8. Candy Carroll Peavy
9. Tanya Whitney
10. Mike Johnson
11. Grover Joseph Rees
12. Rolfe McCollister

**Counsel for Plaintiffs-Appellees:**

1. Edward D. Greim
2. Paul L. Hurd
3. Jackson C. Tyler
4. Katherine E. Graves
5. Matthew R. Mueller
6. A. Bradley Bodamer
7. Graves Garrett Greim LLC
8. Paul Loy Hurd, APLC

**Galmon Movants-Appellants:**

1. Edward Galmon, Sr.
2. Ciara Hart
3. Norris Henderson
4. Tramelle Howard
5. Ross Williams

**Counsel for Galmon Movants-Appellants:**

1. Abha Khanna

2. Daniel Cohen

3. Jacob D. Shelly

4. Lalitha Madduri

5. Qizhou Ge

6. Joseph E. Cullens, Jr.

7. Andrée Matherne Cullens

8. S. Layne Lee

9. Elias Law Group LLP

10. Walters, Thomas, Cullens, LLC

**Defendant-Appellee:**

1. Nancy Landry, in her official capacity as Louisiana Secretary of State

**Counsel for Defendant-Appellee Secretary of State Nancy Landry:**

1. John Carroll Walsh

2. Alyssa M. Riggins

3. Cassie A. Holt

4. Philip J. Strach

5. Shows, Cali & Walsh, LLP

6. Nelson Mullins Riley & Scarborough LLP

**Intervenor-Defendant-Appellee:**

1. State of Louisiana

**Counsel for Intervenor-Defendant-Appellee State of Louisiana:**

1. Morgan E. Brungard

2. Carey T. Jones

3. Jason B. Torchinsky

4. Phillip M. Gordon

5. Brennan A.R. Bowen

6. Zachary Henson

7. LA Atty General's Office

8. Holtzman Vogel Baran Torchinsky & Josefiak, PLLC

**Robinson Intervenors-Defendants-Appellees:**

1. Press Robinson
2. Edgar Cage
3. Dorothy Nairne
4. Edwin Rene Soule
5. Alice Washington
6. Clee Earnest Lowe
7. Davante Lewis
8. Martha Davis
9. Ambrose Sims
10. National Association for the Advancement of Colored People, Louisiana State Chapter
11. Power Coalition for Equity and Justice

**Counsel for Robinson Intervenors-Defendants-Appellees:**

1. John N. Adcock
2. Adam P. Savitt
3. Amitav Chakraborty
4. Arielle B. McTootle
5. Colin Burke
6. Daniel Hessel
7. Dayton Campbell-Harris
8. I. Sara Rohani
9. Jonathan Hurwitz
10. Kathryn C. Sadasivan
11. Megan C. Keenan
12. Neil Chitrao
13. Nora Ahmed
14. R. Jared Evans
15. Robert A. Atkins
16. Robert Klein
17. Sarah Brannon
18. Sophia Lin Lakin
19. Stuart Naifeh
20. T. Alora Thomas-Lundborg
21. Tracie L. Washington
22. Victoria Wenger
23. Yahonnes Cleary
24. Adcock Law
25. NAACP Legal Defense & Education Fund
26. Harvard Law School

27.    American Civil Liberties Union Foundation

28.    ACLU Foundation of Louisiana

29.    Paul, Weiss, Rifkind, Wharton & Garrison LLP


                    */s/ Edward D. Greim*
                    Edward D. Greim
                    *Counsel for Plaintiffs-Appellees*

# STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellees do not believe oral argument is necessary given the straightforward and limited nature of the issues before the Court on appeal. They therefore do not request oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS iii

STATEMENT REGARDING ORAL ARGUMENT vii

TABLE OF CONTENTS viii

TABLE OF AUTHORITIES x

INTRODUCTION 1

STATEMENT OF JURISDICTION 2

STATEMENT OF ISSUES 3

STATEMENT OF THE CASE 4

SUMMARY OF ARGUMENT 9

LEGAL STANDARD 10

ARGUMENT 11

I.     The appeal is moot. 11

II.    Galmon Movants are not entitled to intervention of right. 14

   a. Galmon Movants have no protectable interest in
      defending SB8. 15

   b. Galmon Movants' purported interests were protected. 19

   c. Galmon Movants are adequately represented. 20

      i.    Galmon Movants overcome neither presumption
            of adequate representation. 22

ii.    Galmon Movants interpret "existing party"
incorrectly ........................................................... 25

III.    Galmon Movants are not entitled to vacatur of the
district court's Orders ........................................... 28

IV.    This Court's Jurisdiction is not eliminated by Galmon
Movants' notice of appeal to the Supreme Court. ........ 29

CONCLUSION ................................................................... 37

CERTIFICATE OF SERVICE ............................................. 38

CERTIFICATE OF COMPLIANCE ..................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizonans for Off. Eng. v. Arizona,*
 520 U.S. 43 (1997) .............................................................. 13

*Ceres Gulf v. Cooper,*
 957 F.2d 1199 (5th Cir. 1992) ........................................... 10

*City of Houston v. Am. Traffic Sols., Inc.,*
 668 F.3d 291 (5th Cir. 2012) ............................................. 20

*DeOtte v. Nevada,*
 20 F.4th 1055 (5th Cir. 2021) ...................................... 11, 29

*Dresser Indus., Inc. v. United States,*
 596 F.2d 1231 (5th Cir.1979) ............................................ 12

*Edwards v. Cass County, Tex.,*
 919 F.2d 273 (5th Cir. 1990) ............................................. 26

*Edwards v. City of Houston,*
 78 F.3d 983 (5th Cir. 1996) .......................................... 20, 27

*Enlow v. Tishomingo County, Miss.,*
 962 F.2d 501 (5th Cir. 1992) ............................................. 26

*Fornaris v. Ridge Tool Co.,*
 400 U.S. 41 (1970) ............................................................. 31

*Francis v. Chamber of Com.,*
 481 F.2d 192 (4th Cir. 1973) ............................................. 34

*Franciscan All., Inc. v. Becerra,*
 47 F.4th 368 (5th Cir. 2022) ............................................. 12

*Gonzalez v. Automatic Emps. Credit Union,*
    419 U.S. 90 (1974) .................................................................... 31, 32

*Guenther v. BP Retirement Accumulation Plan,*
    50 F.4th 536 (5th Cir. 2022) ............................................ 14, 21, 23

*Hays v. Louisiana,*
    18 F.3d 1319 (5th Cir. 1994) .................................................. 35, 36

*Hays v. Louisiana,*
    936 F. Supp. 360 (W.D. La. 1996) ............................................... 36

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) ................................................................ 12, 13

*Hopwood v. Texas,*
    78 F.3d 932 (5th Cir. 1996) ............................................... 2, 22, 37

*Ingebretsen v. Jackson Pub. Sch. Dist.,*
    88 F.3d 274 (5th Cir. 1996) .................................................. 15, 20

*Jackson v. Johnson,*
    217 F.3d 360 (5th Cir. 2000) ................................................... 2, 12

*Key v. Doyle,*
    434 U.S. 59 (1977) ........................................................................ 31

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ..................................................................... 30

*Moosehead Sanitary Dist. v. S.G. Phillips Corp.,*
    610 F.2d 49 (1st Cir. 1979) ......................................................... 21

*MTM, Inc. v. Baxley,*
    420 U.S. 799 (1975) ................................................................ 31, 33

*NAACP v. New York,*
    413 U.S 345 (1973) ...................................................................... 33

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
   732 F.2d 452 (5th Cir. 1984) ................................................. 10

*N.Y. Pub. Int. Res. Grp., Inc. v. Regents of Univ. of State of N.Y.*,
   516 F.2d 350 (2d Cir. 1975) ................................................. 34

*Off. of Senator Mark Dayton v. Hanson*,
   550 U.S. 511 (2007) .................................................... 30, 31

*Perry Educ. Assn. v. Perry Local Educators' Assn.*,
   460 U.S. 37, 43 (1983) ......................................................... 31

*Robinson v. Ardoin*,
   605 F. Supp. 3d 759 (M.D. La. 2022) ............................... 16

*Shami v. C.I.R.*,
   741 F.3d 560 (5th Cir. 2014) ............................................. 36

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
   685 F.3d 486 (5th Cir. 2012) ............................................. 26

*St. Cyr v. Hays*,
   No. 94-754, 1994 WL 16042651 (1994) ............................. 35

*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015) .......... 14, 15, 17, 18, 20, 21, 23

*U.S. ex rel. v. Trinity Indus., Inc.*,
   622 F. App'x 448 (5th Cir. Nov. 9, 2015) .......................... 11

*United States v. Franklin Par. Sch. Bd.*,
   47 F.3d 755 (5th Cir. 1995) ............................................... 22

*United States v. Louisiana*,
   543 F.2d 1125 (5th Cir. 1976) ........................................... 34

*United States v. Tex. E. Transmission Corp.*,
  923 F.2d 410 (5th Cir. 1991) ........................................................ 10, 11

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021) ........................................................ 12, 14

*Va. House of Delegates v. Bethune-Hill*,
  139 S. Ct. 1945 (2019) ........................................................ 12

*Wittman v. Personhuballah*,
  136 S. Ct. 1732 (2016) ........................................................ 13

## Constitutional Provisions

U.S. Const. art. III, § 2 ........................................................ 29, 30

## Other Authorities

28 U.S.C. § 1291 ........................................................ 2, 30, 32

28 U.S.C. § 1253 ........................................................ 31, 32, 33

28 U.S.C. § 2101 ........................................................ 36

28 U.S.C. § 2284 ........................................................ 4, 32

Fed. R. Civ. P. 24(a)(1) ........................................................ 10

Fed. R. Civ. P. 24(a)(2) ........................................................ 10

## INTRODUCTION

This appeal is now moot because on May 3, 2024, the three-judge district court vacated and reversed its Orders denying Galmon Movants intervention, and these are the only Orders Galmon Movants now appeal.

Nothing remains for this Court to decide. The Galmon Movants have begun to participate in proceedings below. The U.S. Supreme Court recently stayed those proceedings pending appeal based on the State's complaint that the district court's decision enjoining Louisiana's egregious racially gerrymandered congressional map, SB8, had come too late to implement a new map for the 2024 elections. For 2024, the Movants will have "their" preferred map. In the meantime, two state defendants and one other set of private citizens who are not materially different from the Galmon Movants will have the chance to perfect their appeals in the Supreme Court. The Court will either call for briefing and argument or dismiss the appeal(s) and dissolve the stay so the district court can finish its remedial trial. This remedial phase is the only one in which the Galmon Movants could have an interest (assuming arguendo that all their claims are true). The existing parties could adequately

represent them, but regardless, the Galmon Movants will fully participate. There is nothing more for this Court to decide.

## STATEMENT OF JURISDICTION

This Court lacks jurisdiction for two independent reasons.

First, the appeal is moot. The underlying appealed Orders denying intervention have been vacated by the district court's subsequent Order allowing intervention, the case has progressed to the remedial phase, and there is no remaining case or controversy to adjudicate. U.S. Const. art. III, § 2; *Jackson v. Johnson*, 217 F.3d 360, 364 n.20 (5th Cir. 2000).

Second, even if the appeal is not moot, this Court only has "provisional jurisdiction to review a district court's denial of a motion to intervene." *Hopwood v. Texas*, 78 F.3d 932, 961 (5th Cir. 1996). Since the "claim is without merit, . . . the order 'is not appealable, the appellate court has no jurisdiction, and the appeal should be dismissed.'" *Id.* (quoting *Weiser v. White*, 505 F.2d 912, 916 (5th Cir. 1975)).

If this Court nonetheless decides that the case is not moot and the Court has provisional jurisdiction, it should reach the merits pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether the appeal is moot given the district court's *sua sponte* May 3, 2024, Order granting Galmon Movants intervention and reconsidering the earlier Order denying intervention, appealed here.

2. Whether the three-judge district court's unanimous Order properly denied intervention to Galmon Movants when the Movants were private parties who lacked any enforcement ties or particularized connection to a generalized statewide redistricting statute duly and independently enacted by the State Legislature, and when the only question before the district court was the constitutionality of said statute.

3. Whether the district court properly denied intervention to Galmon Movants when the three defendants in the case adequately represented their interests and had the same objective at the liability stage—to defend the constitutionality of the redistricting statute.

4. Whether the district court had discretion to decide multiple pending intervention motions in one unanimous docket entry containing multiple Orders as part of the district court's broad discretion to control its own docket in a rapidly evolving, expedited case.

## STATEMENT OF THE CASE

On January 15, 2024, the Louisiana Legislature convened for an extraordinary special session to repeal its current congressional redistricting statute and enact a new statute. **ROA.382**. The same day, SB8, a bill to repeal the current congressional redistricting map and impose a new one, was introduced in the Louisiana Senate; SB8 quickly received the requisite votes to pass in both Houses of the Legislature, and on January 22, 2024, just a week after its introduction, the Governor signed it into law. **ROA.382**. On January 31, 2024, a group of Louisiana voters ("Plaintiffs-Appellees") filed the present lawsuit against the Louisiana Secretary of State Nancy Landry seeking injunctive and declaratory relief against SB8 because the law violated their rights under the Fourteenth and Fifteenth Amendments of the U.S. Constitution to be free of racial gerrymandering and intentional discrimination. **ROA.72, 93-103**. Plaintiffs requested a three-judge panel pursuant to 28 U.S.C. § 2284. **ROA.102**. On February 2, 2024, U.S. Court of Appeals for the Fifth Circuit Chief Judge Priscilla Richman convened a three-judge court, designating Circuit Judge Carl E. Stewart of the Fifth Circuit, District Judge Robert R. Summerhays of the Western District of

Louisiana, and District Judge David C. Joseph of the Western District of Louisiana to serve on the panel. **ROA.139**. Plaintiffs-Appellees filed a motion for a preliminary injunction. **ROA.221**. The three-judge court issued a Scheduling Order on February 21, 2024, setting a preliminary injunction hearing consolidated with a trial on the merits to commence April 8, 2024. **ROA.800**.

The State of Louisiana, Robinson Movants, and Galmon Movants-Appellants ("Galmon Movants") all moved to intervene permissively and of right as defendants alongside the Secretary of State to defend SB8's constitutionality. **ROA.158-174, 510-511, 755-56**. None of the proposed intervenors advanced their own counterclaims or crossclaims. On February 14, 2024, Plaintiffs filed a consolidated response opposing the motions to intervene of Robinson and Galmon Movants, all of whom are private Louisiana voters who have no enforcement role in SB8. **ROA.581-615**. On February 23, 2024, both Robinson and Galmon Movants filed replies. **ROA.833-854**.

On February 26, 2024, the three-judge court issued a unanimous Order as to all motions to intervene ("February 26 Order"). **ROA.866-874**. The court unanimously granted the State intervention of right,

allowed Robinson Movants to intervene in any remedial phase of this case, and denied Galmon Movants' motion to intervene. **ROA.866-874**. The court unanimously concluded the State "must defend SB8 as a constitutionally drawn Congressional redistricting map" and "[t]his is the same ultimate objective [Galmon and Robinson] movants would have and interest they would defend this stage of the proceedings." **ROA.870**. The court found Robinson and Galmon Movants had failed to establish the necessary "adversity of interest, collusion, or nonfeasance on the part of the State" to show their interests were not adequately represented by the State. **ROA.871**. The court similarly concluded that Robinson and Galmon Movants did not have a special interest in presenting a defense in this litigation as private parties:

> SB8 is not the Congressional districting map of the proposed *Robinson* and *Galmon* intervenors. It is the Congressional districting map of the State of Louisiana – passed by both Houses of the Louisiana Legislature and then signed into law by the Governor. The *Robinson* and *Galmon* movants have neither a greater nor lesser interest in ensuring that this map does not run afoul of the 14th Amendment to the United States Constitution than any other citizen of the State of Louisiana.

**ROA.871**. The three-judge court did, however, grant the Robinson Movants permissive intervention in the remedial phase of the case, reasoning that "[a] remedial phase would implicate the main objective

6

movants fought for in the Robinson case." **ROA.871**. As for the Galmon Movants, the court concluded that "since the Court is allowing the Robinson movants to intervene . . . the Court does not find it necessary to also allow the Galmon movants to intervene" because "[t]heir interests and objectives will be adequately represented by the *Robinson* movants." **ROA.872**. Both Galmon and Robinson Movants filed motions to reconsider. **ROA.1822-1824, 1887-1891**.

Meanwhile on the merits briefing, the Secretary of State and State filed opposition briefs defending SB8 in response to Plaintiffs' preliminary injunction motion. **ROA.876-77, 1116-1140**. The Galmon and Robinson Movants also filed lengthy and detailed amicus briefs and exhibits opposing Plaintiffs' preliminary injunction motion. **ROA.1392-1816**. Plaintiffs addressed all four sets of briefing in their reply in support of the preliminary injunction motion on March 8, 2024. **ROA.1856-1883**.

Subsequently, on March 15, 2024, the three-judge court unanimously denied Galmon Movants' motion to reconsider and granted Robinson Movants' motion to reconsider in part, allowing them to permissively intervene as to the liability stage of the proceedings ("March 15 Order"). **ROA.2041-2044, 3520**.

On March 20, 2024, Galmon Movants filed a notice of appeal, appealing only the February 26 and March 15 Orders. **ROA.2140-2142**. They also filed a motion to expedite the appeal in the Fifth Circuit to conclude briefing in advance of trial. Galmon Movants-Appellants Motion to Expedite Appeal, *Callais v. Landry*, No. 24-30177 (5th Cir.), ECF No. 16. A panel of this Court denied their motion. Unpublished Order, *Callais v. Landry*, No. 24-30177 (5th Cir.), ECF No. 40.

Meanwhile, the district court held a consolidated hearing on the preliminary injunction motion and trial on the merits April 8-10, 2024. **ROA.3521**. Galmon Movants filed a post-trial amicus brief. **ROA.3485-3504**. On April 30, 2024, the district court permanently enjoined the State from using SB8 in any election and scheduled a status conference for May 6, 2024, to discuss and commence the "remedial stage of this trial." **ROA.3563**. On May 3, 2024, prior to the status conference, the district court *sua sponte* reconsidered its Order Denying Galmon Movants' Motion to Intervene and granted them permissive intervention under Fed. R. Civ. P. 24(b) for the purpose of participating in the remedial phase of the trial. **ROA.3677**. Galmon Movants participated in the remedial status conference on May 6, 2024, as parties. **ROA.3787-3788**.

## SUMMARY OF ARGUMENT

Before even reaching the merits, the Court should dismiss Galmon Movants' appeal for want of jurisdiction. The appeal is moot because the district court has reconsidered the intervention Orders at issue in this appeal and granted Galmon Movants intervention. Accordingly, Galmon Movants' claims are no longer redressable by this Court, and no case or controversy remains for this Court to adjudicate.

Even if not moot, Galmon Movants' appeal lacks merit. They have not met their burden to show (1) they have a legally protectable, particularized interest as private parties in defending the constitutionality of a generalized statewide redistricting law without raising any claims of their own; (2) that any legally protectable, particularized interest has *not* been protected at the liability phase of the litigation despite the fulsome defenses of *three* sets of defendants, including another group of private voter defendants; and (3) their interests were *not* adequately represented by those three sets of defendants, given this Circuit's strong presumptions of adequate representation and the shared ultimate objective of Galmon Movants and those three sets of defendants.

## LEGAL STANDARD

A denial of intervention of right is reviewed *de novo*. *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202 (5th Cir. 1992). But appellate courts must be cognizant that "the inquiry under [Rule 24](a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application" and that "intervention of right must be measured by a practical rather than technical yardstick." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) (citation omitted). Accordingly, the Court should look to the practical determinations made by the district court. *Id.*

Intervention of right, unless conferred unconditionally by a federal statute, Fed. R. Civ. P. 24(a)(1), is only available upon timely application

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2); *see also New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463–64 (5th Cir.) (en banc), *cert. denied*, 469 U.S. 1019 (1984). The burden to demonstrate an entitlement

to intervention of right rests firmly on the movant. *Tex. E. Transmission Corp.*, 923 F.2d at 414.

## ARGUMENT

### I.    The appeal is moot.

The appeal is moot for several reasons.

First, the appeal is moot because the district court has since overturned the Orders underlying the appeal. Galmon Movants specifically appeal "the district court's February 26, 2024, order denying Galmon Movants' motion to intervene as of right, ROA.866–874," and "the district court's subsequent March 15, 2024, denial of Galmon Movants' motion to reconsider that order, ROA.2041–2044." **Appellant's Brief at 17, ROA.2140-2142** (notice of appeal of only those two Orders). But on May 3, the district court *sua sponte* reconsidered its original Order, overturned it, and granted Galmon Movants' motion for intervention. **ROA.3677**. The underlying Orders that form the basis for this appeal and give rise to Galmon Movants' "injury" are now gone. **ROA.2140-2142**. Plainly the appeal is moot. *DeOtte v. Nevada*, 20 F.4th 1055, 1070 (5th Cir. 2021); *U.S. ex rel. v. Trinity Indus., Inc.*, 622 F. App'x 448 (5th Cir. Nov. 9, 2015) (Mem) (per curiam) (holding that appeal of denial of motion to intervene was moot because the district court had

already granted appellants requested relief); *Jackson*, 217 F.3d at 364 n.20 (case becomes moot on appeal once party receives requested relief (citing *Dresser Indus., Inc. v. United States*, 596 F.2d 1231 (5th Cir.1979))); *cf. Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022) (case becomes moot when underlying rule, order, or statute challenged is repealed or expires).

Second, the appeal is moot because Galmon Movants suffer no ongoing injury. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). Since the district court's issuance of a permanent injunction on April 30, the remedial phase of this case has commenced, **ROA.3563-3564, 3787-3788, 3826-3829**, and Galmon Movants have been allowed to intervene in all stages of the remedial phase of this trial, **ROA.3677**.

Even if Galmon Movants alleged harm from their inability to intervene at the liability stage, since the time they appealed, the district court has issued a final determination of liability; that part of the case is over. **ROA.3563-3564**. And Galmon Movants lack standing to appeal the district court's liability determination. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019); *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). While parties do not need standing to intervene as

defendants, they must have standing to appeal. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). In the case of intervening parties, an "intervenor cannot step into the shoes of the original party . . . unless the intervenor independently fulfills the requirements of Article III." *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016) (quotation omitted). *Hollingsworth* is dispositive on this issue; the upshot: private parties lack standing to appeal an injunction forbidding state officials from enforcing a state law when the private parties "have no role—special or otherwise—in the enforcement of" the law. *Hollingsworth*, 570 U.S. at 707. The district court's merits Order only enjoined the State of Louisiana and SB8's enforcers, prohibiting them "from using SB8's map of congressional districts for any election." **ROA.3563**. It did "not order[]" private parties "to do or refrain from doing anything." *Hollingsworth*, 570 U.S. at 705. Thus, Galmon Movants have "no direct stake in the outcome of [any] appeal" of the district court's Order. *Id.* at 705-06 (quotation omitted). They "have no 'personal stake' in defending [SB8's] enforcement that is distinguishable from the general interest of every citizen of" Louisiana. *Id.* at 707 (quoting *Lujan*, 504 U.S. at 560-61) (citation omitted). Accordingly, since they suffer no ongoing injury from their

inability to intervene at the liability stage, their motion to intervene is moot. *Uzuegbunam*, 141 S. Ct. at 796.

## II.    Galmon Movants are not entitled to intervention of right.

Even if this Court were to address the merits of this appeal, there is no reason to disturb the district court's ruling because the Galmon Movants are not entitled to intervention as of right. A movant bears the burden to prove each of the following four factors to intervene as of right:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984)); *see also Guenther v. BP Retirement Accumulation Plan*, 50 F.4th 536, 542-43 (5th Cir. 2022) (per curiam) ("A movant must show that she satisfies each factor of the above test to be entitled to intervene."). Galmon Movants cannot meet this burden.

### a. Galmon Movants have no protectable interest in defending SB8.

The district court has allowed Galmon Movants to intervene in all respects as to the remedial phase of the case below. Accordingly, even if the whole appeal is not moot, the appeal to intervene in the remedial phase is. The only possible remaining question is whether Galmon Movants have an interest in the already-concluded liability phase that can be redressed by this Court. *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir.) (en banc), *cert. denied* 519 U.S. 965 (1996) (holding that proposed intervenors must establish intervention of right as to the "issue[s] before the court"). The answer is no. Any potential interest is no longer redressable because the liability phase has concluded. *See supra* Part I. And regardless, Galmon Movants lack a requisite interest.

Intervention is only appropriate where an individual asserts and demonstrates a "concrete, personalized, and legally protectable" interest in the phase of the proceedings; "generalized preference[s]" are insufficient. *Texas*, 805 F.3d at 658, 657. The liability phase of the underlying action *only* addressed the constitutionality of SB8. Galmon Movants do not assert—and cannot assert—a particularized legally

protectable interest in SB8's map enacted by the Legislature. If there is any interest in preserving this statewide map, it is *generalized*, belongs to all Louisiana voters, and therefore does not support intervention of right at the liability stage. *Id*. at 657.

First, Galmon Movants assert an interest in "secur[ing] the fruits of the victory that [four of them] achieved over the Secretary's opposition in the Middle District [Voting Rights Act] action." **Appellant Br. at 35**. That "victory" was a vacated preliminary injunction that never addressed SB8's map or any similar map, never secured them a right to SB8's map or any other map, and never secured them any final, vindicable remedy. *Robinson v. Ardoin*, 605 F. Supp. 3d 759 (M.D. La. 2022), *vacated*, 86 F.4th 574 (5th Cir. 2023).

Next, Galmon Movants seemingly assert an interest based on "whether their home parishes are *drawn* into Black-opportunity districts." **Appellant Br. at 37** (emphasis added). But individuals do not have legally protectable rights to be included in majority-Black districts. Indeed, because of the scattered nature of the Black populations in many States (like Louisiana), stretching to draw some Black voters into a majority-Black district may require excluding other voters who live in

other areas of the State. That was the case with SB8, which by reaching from Baton Rouge all the way to Shreveport necessarily excluded some Galmon Movants who lived in the opposite direction (in the Florida parishes) and had hoped the district would veer and snake towards them.

Finally, Galmon Movants contend one of their newly-recruited members, Dr. Williams, has a supposed "personal electoral interest." **Appellant Br. at 38-39**. Galmon Movants argue it is "imperative that Dr. Williams have access to the liability phase" because SB8 places him in the new Black-opportunity district and that, "if [Respondents] succeed at the liability phase, they will necessarily deprive Dr. Williams of the one configuration that protects his personal electoral interests." *Id.* at 38-39.

But, as stated above, neither Dr. Williams nor any other voter has a right to be placed in a majority-Black district—much less a particularized right greater than any of the other 4.6 million residents of the State. *Texas*, 805 F.3d at 658. Indeed, there is no way to balance or adjudicate such interests, as they are frequently in direct conflict. Dr. Williams' *gain* in Natchitoches Parish is the *loss* of other Galmon Movants in the Florida parishes who could only have been included had

17

the district veered in the opposite direction, as they had advocated in the *Robinson* litigation, where Dr. Williams did not participate. **ROA.597-598**. At bottom, Dr. Williams' supposed "interest" amounts to a mere "generalized preference that the case come out a certain way," not a legally protectable interest. *Texas*, 805 F.3d at 657.

Even accounting for Dr. Williams' preference, Galmon Movants are simply wrong that Plaintiffs-Appellees' success at the liability phase "necessarily deprive[d] Dr. Williams" of this preference. **Appellant Br. at 38-39**. The remedial phase in the underlying case will determine what map will be used in Louisiana. Until the remedial phase (to which Galmon Movants have been granted full intervention) concludes, no one will know if Dr. Williams, or any other Movant, will be placed in a majority-Black district. In any such district, it is likely that some Galmon Movants will be included and some will not. Thus, any "interest" based on Dr. Williams' preference is completely contingent on the remedial phase. Galmon Movants practically concede the point, stating that "any remedial phase, if necessary, will determine the placement of any Black opportunity districts." **Appellant Br. at 38**. Exactly. Galmon Movants

already have the remedy they request. In sum, they articulate no legally protectable interest in the liability phase of the litigation.

### b. Galmon Movants' purported interests were protected.

Even if Galmon Movants could establish that they had an interest at the liability stage, they have not shown that their non-participation impeded their ability to protect those alleged interests. Fed. R. Civ. P. 24(a)(2). As stated, all interests are fully vindicable in the remedial phase. The only real allegation they make of an impairment at the liability stage is to Dr. Williams, who did not even participate in the *Robinson* litigation, because he resides in SB8's newly-created majority-Black district. **Appellate Br. at 38-39**. But again, even assuming that his mere residence creates an actual interest (it does not), Galmon Movants fail to show that litigation over SB8's constitutionality somehow thwarted his ability to be placed in a majority-Black district. The district court never decided which maps beyond SB8 were unconstitutional; it only decided that SB8 itself was unconstitutional. **ROA.3505-3564**. The district court's Orders denying intervention did not impede Galmon Movants' ability to protect their interests because those interests—even

assuming they are legally protectable—relate only to the remedial phase where Galmon Movants are parties.

### c. Galmon Movants are adequately represented.

Independently, the district court did not err in denying Galmon Movants' motion to intervene of right because they failed to meet their burden to show they are inadequately represented by the current parties. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (en banc).

Two presumptions control the adequate representation inquiry and establish a strong bulwark against intervention of right. First, a "public entity must normally be presumed to represent the interest of its citizens and to mount a good faith defense of its laws." *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012). "A court must be circumspect about allowing intervention of right by public-spirited citizens in suits by or against a public entity for simple reasons of expediency and judicial efficiency." *Id.* The intervenor must show "that its interest is in fact different from that of the government entity and that the interest will not be represented by it." *Texas*, 805 F.3d at 661-62; *see also Ingebretsen*, 88 F.3d at 280-81 (proposed intervenors could not intervene as of right as defendants in action challenging a state statute

permitting public-school students to pray at school events; their First Amendment interests were adequately represented by the State Attorney General who could assert rights of all citizens affected by the law).

A second presumption arises where the "would-be intervenor has the same ultimate objective as a party to the lawsuit"; it is overcome only by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Texas*, 805 F.3d at 661-62 (quotation omitted); *see also Guenther*, 50 F.4th at 543. Proposed intervenors must "produce something more than speculation as to the purported inadequacy." *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). "In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662. "Differences of opinion regarding an existing party's litigation strategy or tactics used in pursuit thereof, without more, do not rise to an adversity of interest." *Guenther*, 50 F.4th at 543; *see also id.* ("A proposed intervenor's desire to present an additional argument or a variation on an argument does not establish inadequate representation." (quoting *SEC v. LBRY, Inc.*, 26 F.4th 96, 99–100 (1st Cir. 2022))); *id.* at 544 ("If

disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning." (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001))); *United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995). Rather they must show their "allegedly divergent interests" will have "concrete effects on the litigation." *Texas*, 805 F.3d at 662 (citing *Hopwood v. Texas*, 21 F.3d 603, 606 (5th Cir. 1994)). There is "no authority for the proposition that they are entitled to intervene because no other party is asserting their current position." *Franklin Par. Sch. Bd.*, 47 F.3d at 758. The same is true for differences of opinion regarding "*individual aspects of a remedy*"; these differences do "not overcome the presumption of adequate representation." *Id.* (quoting *Jenkins by Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996)).

### i. Galmon Movants overcome neither presumption of adequate representation.

Both presumptions apply. Galmon Movants overcome neither.

The first presumption applies because the State already represented Galmon Movants' interests in defending the constitutionality of SB8. Again, Galmon Movants must show "that [their]

interest is in fact different from that of the government entity and that the interest will not be represented by it." *Texas*, 805 F.3d at 661-62. Galmon Movants cannot, even though they had the benefit of knowing the State's entire plan for defending the liability stage when they filed their Appellate Brief. Despite Galmon Movants' close scrutiny of the parties' advocacy and their own amicus participation in the liability stage, they do not identify a single difference, much less a *germane* difference between their interests and the State's, that somehow prejudiced them during the liability stage. *Id.* at 662. Accordingly, the Court should deny intervention of right.

The second presumption applies because at the liability stage, the Secretary, the State, Robinson Intervenors, and now Galmon Movants all had "the same ultimate objective": upholding SB8. *Id.* at 661 (quoting *Edwards*, 78 F.3d at 1005). Any purported differences in litigating strategy do not undermine that common ultimate objective. *Guenther*, 50 F.4th at 543. And Galmon Movants identify no "adversity of interest, collusion, or nonfeasance" to overcome the presumption. *Texas*, 805 F.3d at 661-62 (quoting *Edwards*, 78 F.3d at 1005). Accordingly, Galmon Movants have not met their burden to show inadequate representation.

Moreover, not only was Galmon Movants' "ultimate objective" at the liability stage adequately represented, but even Galmon Movants' *minor* goals were specifically represented by Robinson Movants, who came in permissively, at the liability stage. **ROA.2042, 3520**.[1] Robinson and Galmon Movants' interests in defending SB8 were entirely the same. It's telling that Galmon Movants' Brief focuses on their collective and coordinated effort in litigation—even down to filing their complaints "minutes" apart. **Appellant Br. at 26, 36-37**. The only difference Galmon Movants identify? Residences of individual movants. ***Id.* at 37-38**. But notably, it was only the Robinson Movants who had an individual—Clee Lowe, living in East Baton Rouge—move from a non-majority-Black district to a new majority-Black district under SB8; the Galmons had to recruit a Texas voter who had just moved to Natchitoches and belatedly registered there. **ROA.597-598**. Indeed, there are greater differences *within* each set of Movants—the Robinson Movants and Galmon Movants—than there are *between* the Robinson and Galmon Movants. And what they all have in common is that most of their

---

[1] Robinson Intervenors were only granted permissive intervention. **ROA.2042, 3520**. Any implication from Galmon Movants' Brief that Robinson Intervenors were allowed to intervene as of right is incorrect.

members stayed in majority-Black districts under SB8, or stayed in non-majority districts under SB8. In short, the only thing these Movants seem to have in common is that regardless of where they live, their counsel have a "rooting" interest in favor of two majority-Black districts.

Even if the Galmons use their Reply Brief to finally disclose some way in which the residences of each set of Movants could impact the remedial stage, none of these differences could have affected their common interests, much less their ultimate objective, at the liability stage. Even in Galmon Movants' Post-Trial Amicus Brief, they identify no interests that diverged from Robinsons'. **ROA.3485-3504**. Rather, Galmon Movants' Brief was a mere extension of Robinsons', working in tandem with them to provide additional pages of briefing to oppose the Plaintiffs. The three-judge court rightly determined that the two sets of movants were duplicative and Galmon Movants were adequately represented.

### ii. Galmon Movants interpret "existing party" incorrectly.

Galmon Movants do not establish the relevant requirements for intervention of right. They focus on the remedial rather than liability stage. They fail to identify a legally protectable right at the liability stage.

And they fail to identify how their interests diverged from the State or Robinson Intervenors to overcome the two presumptions of adequate representation. Galmon Movants attempt to bypass all these necessary steps to establish intervention of right. They instead devote precious pages of their Brief to a novel theory that they were inadequately represented because Robinson Intervenors were not "existing parties" at the time the three-judge court unanimously denied Galmon Movants intervention.

Rule 24 tells district courts nothing about the order of deciding intervention motions; it does not create a first to file rule; and it does not define "existing parties." Rather, the order of decisions and the order to admit parties plainly falls within the broad purview of the district court. This Court has repeatedly held that a "district court has broad discretion to control its own docket." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012); *see also Edwards v. Cass County, Tex.*, 919 F.2d 273, 275 (5th Cir. 1990). And "questions of the timing and sequence of motions in the district court, best lies at the district court's discretion." *Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 507 (5th Cir. 1992). That's true for questions and decisions involving intervention.

After all, intervention of right is a "flexible" inquiry for the district court, "which focuses on the particular facts and circumstances surrounding each application" and "must be measured by a practical rather than technical yardstick." *Edwards*, 78 F.3d at 999 (quotation omitted). A district court's decision to dispense with several motions in the same docket entry and in whatever sequence it wishes within that docket entry plainly falls within its broad discretion.

Given the speed of this litigation in light of the impending 2024 congressional election, the number of intervention motions before the district court, the sheer number of lawyers seeking admission, and the dozens of other filings and pending motions before the court, the three-judge district court plainly had the discretion and properly exercised its discretion to decide the intervention motions in a consolidated, timely manner.[2]

The result Galmon Movants' wooden, inflexible rule would compel is absurd and fails to account for a district court's discretion over its docket and "flexible" task in intervention cases. *Edwards*, 78 F.3d at 999.

---

[2] Galmon Movants' reliance solely on out-of-Circuit unpublished district court orders for its farcical theory only proves the point: this is an area of discretion left to individual district courts to control their own dockets.

Galmon Movants would permit a district court to deny admission if seconds before the court admits another party in a separate docket entry. But Galmon Movants would not allow a district court to issue multiple orders admitting some parties and denying admission to others in the same docket entry. Even if Galmon Movants' extreme, rigid theory of operations truly were the law, it's not clear why the rule would forbid the three-judge panel's action here. The unanimous three-judge February 26 Order actually granted Robinson Movants intervention *before* the Order addressed Galmon Movants. **ROA.869-873**. By the time the three-judge panel laid pen to paper as to the Galmon Movants, Robinson Movants were already admitted into the case and were existing parties. Merely to walk through this mechanical exercise of sifting the precise order of paragraphs in judicial opinions demonstrates why the law plainly does not require the result Galmon Movants demand. The three-judge court acted within its discretion in evaluating the intervention motions in one docket entry.

### III.   Galmon Movants are not entitled to vacatur of the district court's Orders.

Finally, Galmon Movants provide no basis in the law for their requested extraordinary remedy, vacatur of "any district court orders

that were entered without [their] participation." **Appellant Br. at 39**. Nor is there any. This Court has no authority to vacate orders not before it on appeal. *DeOtte v. Nevada*, 20 F.4th 1055, 1065 (5th Cir. 2021) ("Our authority to vacate comes from a statute that provides that an appellate court 'may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court *lawfully brought before it for review*.'" (quoting 28 U.S.C. § 2106 (emphasis added))). The only Orders before this Court on appeal are the February 26 and March 25 Orders denying intervention, **ROA.2140-2142**, and these have already been overridden by the district court's May 3 Order, **ROA.3677**.

## IV. This Court's jurisdiction is not eliminated by Galmon Movants' notice of appeal to the Supreme Court.

Finally, a word about this Court's jurisdiction in light of Galmon Movants' recently filing in the district court of a notice of appeal of the February 26 and March 25 Orders currently before this Court to the U.S. Supreme Court. **ROA.4119-4121** ("Notice of Appeal"). Regardless of whether this Court lacks jurisdiction for independent reasons, *see supra* Part I, the new Notice of Appeal does not impact this Court's jurisdiction.

Congress has authority to create lower federal courts and to regulate the Supreme Court's appellate jurisdiction. U.S. Const. art. III,

§ 2, cl. 2 ("In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make."). And federal courts are bound by Congress's decrees:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, *see Willy v. Coastal Corp.*, 503 U.S. 131, 136–137 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986), which is not to be expanded by judicial decree, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951).

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Congress has exercised its constitutional authority to regulate appellate jurisdiction by statute. For example, 28 U.S.C. § 1291 provides in part: "The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . , except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. The plain text of this statute confers jurisdiction over the final intervention Orders of the Western District of Louisiana Court to this Court unless the narrow exception permitting direct review to the Supreme Court applies.

Few statutes allow for direct review. The limited ones that do "are to be strictly construed." *Off. of Senator Mark Dayton v. Hanson*, 550 U.S.

511, 515 (2007) (quoting *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 43 (1983)) (citing *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 42, n.1 (1970) (per curiam)); *see also Key v. Doyle*, 434 U.S. 59, 65 (1977) (discussing "the long-established principle that counsels a narrow construction of jurisdictional provisions authorizing appeals as of right to [the Supreme] Court, in the absence of clear congressional intent to enlarge the Court's mandatory jurisdiction"). That "canon of narrow construction" is especially applicable when it comes to interpreting the relevant direct review statute here—28 U.S.C. § 1253. *Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90, 98 (1974) (reasoning that "a narrow construction" of § 1253 is necessary and "consonant with the overriding policy, historically encouraged by Congress, of minimizing the mandatory docket of this Court in the interests of sound judicial administration"); *see also MTM, Inc. v. Baxley*, 420 U.S. 799, 804 (1975) (per curiam) (reasoning that "the congressional policy behind the three-judge court and direct-review apparatus" favors a "narrow construction of § 1253").

Galmon Movants allege in their Notice of Appeal, **ROA.4119-4121**, that direct review is available in the Supreme Court under 28 U.S.C.

§ 1253, which allows for direct review of some orders in limited circumstances:

> Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

28 U.S.C. § 1253. But the plain text of this statute nowhere permits the Supreme Court to take jurisdiction of intervention orders—only orders granting or denying interlocutory or permanent injunctions. *Id*. As such, the strict construction mandate instructs that the Supreme Court cannot directly review the intervention orders. Rather, jurisdiction lies with this Court. 28 U.S.C. § 1291.

This result from the plain text § 1253 also makes sense in light of 28 U.S.C. § 2284, the statute used to convene and govern the three-judge district courts. Section 2284 allows a *single* judge to enter intervention orders and other similar orders that do not address the merits of the case. 28 U.S.C. § 2284(b)(3). Meanwhile, the merits must be addressed by three judges. *Id*. In that way, § 2284 largely reflects the same concerns as § 1253. For those orders that can be heard by a single judge, the normal appellate procedure is appropriate. *See Gonzalez*, 419 U.S. at 100 & n.19

(reasoning that fact that order could have been determined by single judge counseled against direct review). For those orders that must be heard by a three-judge court, the concerns surrounding direct review to the Supreme Court are at stake.

Supreme Court precedent also confirms this result. For example, in *NAACP v. New York*, 413 U.S 345 (1973), the Supreme Court found that Section 4(a) of the Civil Rights Act provided direct review of intervention orders to the Supreme Court. Relevant here, the Court reasoned that Section 4(a)'s language authorized direct review for intervention orders *because* it was distinct from 28 U.S.C. § 1253's language. *Id*. at 356.

Other cases have achieved similar results. For example, in *MTM, Inc. v. Baxley*, the Court concluded that a "direct appeal will lie to this Court under § 1253 from the order of a three-judge federal court denying interlocutory or permanent injunctive relief *only where* such order rests upon resolution of the merits of the constitutional claim presented below." 420 U.S. at 804 (emphasis added)); *see also id.* at 809 (Douglas, J., dissenting) (noting that the law as interpreted allowed appeals of some orders to go to the Court of Appeals and some to go to the Supreme Court); *see also Gonzalez*, 419 U.S. at 100. The intervention Orders at issue here

do not rest upon resolution of the merits. That is why it is common for appeals of intervention orders to be resolved *before* the merits litigation in the district court concludes.

This Court also followed the plain language of these statutes in *United States v. Louisiana*, 543 F.2d 1125 (5th Cir. 1976). There, this Court heard an appeal "from an order of a three-judge district court denying a motion to intervene" and explicitly determined it had appellate jurisdiction over these orders: "We hold that the order of the three-judge court is appealable to the Court of Appeals . . . ." *Id.* at 1126; *see also id.* ("At the very outset, we must decide whether the denial of a motion to intervene by a three-judge court is appealable to the Court of Appeals or the Supreme Court. In light of recent Supreme Court decisions, we hold that the Court of Appeals has jurisdiction of appeals from orders of this nature by a three-judge court." (footnote omitted)). That case binds the Court here.[3]

---

[3] Other Circuits have also reached similar results. *N.Y. Pub. Int. Res. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 351 n.1 (2d Cir. 1975); *Francis v. Chamber of Com.*, 481 F.2d 192, 194 (4th Cir. 1973) ("Since the instant appeal is from a denial of a petition for intervention and not from the denial of an injunction, we believe this is the proper forum in which to contest the decision.").

This Court departed from that precedent in *Hays v. Louisiana*, 18 F.3d 1319 (5th Cir. 1994), but it did so based on a mere expectation that the Supreme Court would seize jurisdiction of the appealed intervention order even though the Supreme Court had not done so in the past. *Id*. at 1320-21. The Supreme Court did not fulfill that expectation; it never exercised jurisdiction over the intervention order before the Fifth Circuit or any subsequent intervention order. Instead, after plaintiffs amended their complaint, proposed intervenors filed a new motion for intervention. Petition for Writ of Certiorari Before Judgment, *St. Cyr v. Hays*, No. 94-754, 1994 WL 16042651, at *7 (1994). When the district court denied proposed intervenors' second intervention motion, they simultaneously sought appellate review in the Fifth Circuit and direct review in the Supreme Court. *Id*. at *2-3, *8. But this shift in strategy failed. Proposed intervenors filed a petition for writ of certiorari before judgment, which the Supreme Court denied. *St. Cyr v. Hays*, 513 U.S. 1066 (1994) (Mem). They also filed a direct appeal, but the Supreme Court deferred any probable jurisdiction finding and instead remanded the order to the district court to cure procedural defects. *St. Cyr v. Hays*, 513 U.S. 1053 (1994) (Mem). On remand, the district court independently decided to

admit the parties without prodding from the appellate courts. *Hays v. Louisiana*, 936 F. Supp. 360, 367 n.31 (W.D. La. 1996). *Hays* resulted in a hot-potato-appeal where neither the Fifth Circuit nor the Supreme Court picked up the appeal. If appellate jurisdiction over intervention orders lies anywhere, it is in this Court of Appeals.

Finally, *Hays* does not apply here for two reasons.

First, as previously noted, *Hays* relied on a false premise that the Supreme Court could hear the case. But even if that were correct there, that presumption is inapposite here. The Supreme Court cannot review these intervention Orders because Galmon Movants' Notice of Appeal is untimely under 28 U.S.C. § 2101. The appealed intervention Orders were entered on February 26, 2024, and March 15, 2024, but the Notice of Appeal was not filed until May 30, 2024. **ROA.4119-4121**. Accordingly, the Supreme Court cannot hear a direct appeal of this order so the *Hays* presumption does not apply.

Second, even if *Hays* applied and diverged from *U.S. v. Louisiana*, this Court would be bound to follow the reasoning of *U.S. v. Louisiana* as the earlier opinion. *Shami v. C.I.R.*, 741 F.3d 560, 569 (5th Cir. 2014) ("When panel opinions appear to conflict, we are bound to follow the

earlier opinion." (quoting *H & D Tire & Auto.–Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000))). And *U.S. v. Louisiana* compels the opposite result.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellees respectfully request the Court either dismiss the appeal as moot; dismiss for lack of jurisdiction because the appeal is without merit, *Hopwood*, 78 F.3d at 961; or affirm the three-judge district court intervention Orders on the merits.

Respectfully submitted,

*/s/ Edward D. Greim*
Edward D. Greim, MO #28676
GRAVES GARRETT GREIM LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I, Edward D. Greim, certify that on June 17th, 2024, a copy of the foregoing, was filed with the Clerk of the Court using the CM/ECF system, which sent notification to all parties through their counsel of record.

*/s/ Edward D. Greim*
Edward D. Greim
*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the following statements are true:

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B). It contains 7,408 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6). It has been prepared in proportionally-spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Executed this 17th day of June, 2024

*/s/ Edward D. Greim*
Edward D. Greim