## No. 24-30177

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

PHILLIP CALLAIS; LLOYD PRICE; BRUCE ODELL; ELIZABETH ERSOFF; ALBERT CAISSIE; DANIEL WEIR; JOYCE LACOUR; CANDY CARROLL PEAVY; TANYA WHITNEY; MIKE JOHNSON; GROVER JOSEPH REES; ROLFE MCCOLLISTER,
*Plaintiffs-Appellees,*

v.

NANCY LANDRY, in her official capacity as Louisiana Secretary of State,
*Defendant-Appellee,*

v.

STATE OF LOUISIANA,
*Intervenor-Defendant-Appellee,*

v.

PRESS ROBINSON; EDGAR CAGE; DOROTHY NAIRNE; EDWIN RENE SOULE; ALICE WASHINGTON; CLEE EARNEST LOWE; DAVANTE LEWIS; MARTHA DAVIS; AMBROSE SIMS; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE LOUISIANA STATE CONFERENCE; POWER COALITION FOR EQUITY AND JUSTICE,
*Intervenor-Defendants-Appellees,*

v.

EDWARD GALMON, SR.; CIARA HART; NORRIS HENDERSON; TRAMELLE HOWARD; ROSS WILLIAMS,
*Movants-Appellants.*

On Appeal from the United States District Court
for the Western District of Louisiana
(Case No. 3:24-cv-00122-DCJ-CES-RRS)

## *GALMON* MOVANTS-APPELLANTS'
## REPLY BRIEF

*(Counsel listed on next page)*

J.E. Cullens, Jr.
Andrée Matherne Cullens
S. Layne Lee
WALTERS, THOMAS, CULLENS, LLC
12345 Perkins Road
Building One
Baton Rouge, Louisiana 70810
(225) 236-3636

Abha Khanna
ELIAS LAW GROUP LLP
1700 Seventh Avenue
Suite 2100
Seattle, Washington 98101
(206) 656-0177

Lalitha D. Madduri
Jacob D. Shelly
Qizhou Ge
Daniel Cohen
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, D.C. 20001
(202) 968-4490

*Counsel for* Galmon *Movants-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ........................................................................... 1

ARGUMENT ................................................................................ 2

I.    When *Galmon* Movants claimed an interest in this
      litigation, no "existing parties" adequately represented
      that interest........................................................................ 2

      A.    Rule 24's plain language requires reversal. ................. 3

      B.    All relevant judicial precedent favors reversal. ........... 4

      C.    Administrative and equitable considerations
            favor reversal. ................................................... 8

II.   *Galmon* Movants satisfied the remaining requirements
      for intervention as of right.................................................. 12

      A.    *Galmon* Movants' motion was timely......................... 13

      B.    *Galmon* Movants claimed significant interests in
            this action................................................................... 13

      C.    The disposition of this case may impair *Galmon*
            Movants' significant interests. .................................. 19

      D.    Existing parties did not adequately represent
            *Galmon* Movants' interests. ...................................... 20

III.  This appeal is not moot..................................................... 27

CONCLUSION ........................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Milligan,*
    599 U.S. 1 (2023) ........................................................ 18, 21

*Beauregard, Inc. v. Sword Services L.L.C.,*
    107 F.3d 351 (5th Cir. 1997) ................................................ 11

*Bouchikhi v. Holder,*
    676 F.3d 173 (5th Cir 2012) .................................................. 3

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ............................................ 13, 23

*Chiglo v. City of Preston,*
    104 F.3d 185 (8th Cir. 1997) ................................................ 24

*Crossroads Grassroots Policy Strategies v. FEC,*
    788 F.3d 312 (D.C. Cir. 2015) .............................................. 24

*Edwards v. Cass County,*
    919 F.2d 273 (5th Cir. 1990) .............................................. 6, 7

*Edwards v. City of Houston,*
    78 F.3d 983 (5th Cir. 1996) ....................................... 5, 6, 7, 19

*Enlow v. Tishomingo County,*
    962 F.2d 501 (5th Cir. 1992) .............................................. 6, 7

*Fresno County v. Andrus,*
    622 F.2d 436 (9th Cir. 1980) ................................................ 24

*Friends of the Boundary Waters Wilderness
    v. U.S. Army Corps of Engineers,*
    No. 19-cv-2493, 2020 WL 6262376
    (D. Minn. Apr. 9, 2020) ...................................................... 5

*Garfield County v. Biden,*
    No. 4:22-cv-00059-DN-PK, 2023 WL 2561539
    (D. Utah March 17, 2023) ............................................... 9, 11

*Idaho Farm Bureau Federation v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ................................................................ 14

*Kelly v. Boeing Petroleum Services, Inc.,*
    61 F.3d 350 (5th Cir. 1995) .................................................................... 3

*Klick v. Cenikor Foundation,*
    94 F.4th 362 (5th Cir. 2024) .................................................................. 8

*La Union del Pueblo Entero v. Abbott,*
    29 F.4th 299 (5th Cir. 2022) ........................................ 6, 15, 19, 20, 22

*League of United Latin American Citizens,*
    *Council No. 4434 v. Clements,*
    999 F.2d 831 (5th Cir. 1993) ................................................................ 14

*League of United Latin American Citizens,*
    *Distict 19 v. City of Boerne,*
    659 F.3d 421 (5th Cir. 2011) ........................................................ 14, 16

*McQuilken v. A & R Development Corp.,*
    510 F. Supp. 797 (E.D. Pa. 1981) ...................................................... 14

*Miller v. Vilsack,*
    No. 21-11271, 2022 WL 851782
    (5th Cir. Mar. 22, 2022) ................................................................ 6, 23

*Missouri Coalition for Environment Foundation*
    *v. Wheeler,*
    No. 2:19-cv-4215-NKL, 2020 WL 2331201
    (W.D. Mo. May 11, 2020) .............................................................. 9, 11

*Moore v. Harper,*
    600 U.S. 1 (2023) ................................................................................ 28

*Prete v. Bradbury,*
    438 F.3d 949 (9th Cir. 2006) .............................................................. 14

*Robinson v. Ardoin,*
    605 F. Supp. 3d 759 (M.D. La. 2022) ................................................ 16

*Robinson v. Ardoin,*
    86 F.4th 574 (5th Cir. 2023) .............................................................. 15

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) .............................................................. 23

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,*
    685 F.3d 486 (5th Cir. 2012) ................................................................. 6

*Texas v. United States,*
    805 F.3d 653 (5th Cir. 2015) ......................................................... 13, 23

*Thornburg v. Gingles,*
    478 U.S. 30 (1986) ............................................................................... 16

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972) ................................................................. 20, 22, 24

*Wal-Mart Stores, Inc. v. Texas Alcoholic
    Beverage Commission,*
    834 F.3d 562 (5th Cir. 2016) ............................................................... 23

*WildEarth Guardians v. U.S. Forest Service,*
    573 F.3d 992 (10th Cir. 2009) ............................................................. 24

**Rules**

Fed. R. Civ. P. 24(a) .................................. 1, 2, 4, 5, 6, 7, 8, 11, 12, 13, 26

**Other Authorities**

*Gov. Jeff Landry Opens First Special Session on Court
    Ordered Redistricting,* Off. of the Governor (Jan. 16,
    2024), https://gov.louisiana.gov/news/governor-jeff-landry-
    opens-first-special-session-on-court-ordered-redistricting ................ 15

La. Senate, Senate Comm. on Senate & Governmental
    Affairs, 51st Extraordinary Sess., Day 2 (Jan. 16, 2024),
    https://senate.la.gov/s_video/VideoArchivePlayer?v=senat
    e/2024/01/011624SG2 ......................................................................... 15

## INTRODUCTION

Plaintiffs appear eager to argue everything except the crux of this appeal: whether Rule 24 should be applied according to its plain language, consistent with ordinary practice across the country, in a manner that promotes orderliness and predictability. It should. Because no "existing parties adequately represent[ed]" *Galmon* Movants when they claimed an interest in this litigation, Fed. R. Civ. P. 24(a)(2), the district court's denial of intervention was legal error.

Rather than seriously contend that *Robinson* Intervenors were existing parties when *Galmon* Movants moved to intervene, as the district court seemed to assume—a counterfactual that still would not have defeated *Galmon* Movants' right to participate as parties— Plaintiffs attempt to manufacture other legal issues for review. Much of their energy is devoted to relitigating whether *Galmon* Movants claimed an interest related to the litigation, a prerequisite for intervention as of right that the district court had no trouble recognizing the *Galmon* Movants satisfied. Alternatively, Plaintiffs suggest that *Galmon* Movants' right to participate in liability proceedings below is somehow mooted by the fact that liability was decided against their interests, in

their absence. While a liability ruling in favor of *Defendants* may have mooted *Galmon* Movants' basis for intervention, the district court's ruling for Plaintiffs—permanently enjoining the districting plan that four *Galmon* Movants won through related litigation and that provided the fifth *Galmon* Movant a district in which he has the opportunity to elect his candidates of choice—exacerbates the prejudice to *Galmon* Movants and requires vacatur of the injunction below.[1]

## ARGUMENT

### I.    When *Galmon* Movants claimed an interest in this litigation, no "existing parties" adequately represented that interest.

Nothing in Plaintiffs' four paragraphs on Rule 24's reference to adequate representation by "existing parties" meaningfully addresses—let alone counters—the arguments presented in *Galmon* Movants' opening brief. *Compare* Br. of Pls.-Appellees at 25–27 ("Pls.' Br."), ECF No. 83, *with Galmon* Movants-Appellants' Opening Br. at 16–21, ECF No. 67 ("Opening Br."). The text of the rule, relevant precedent, and

---

[1] As will be further argued in a forthcoming motion to stay proceedings, this Court may now lack jurisdiction over this appeal on intervention in light of the merits appeal that has since been filed in the U.S. Supreme Court. *Galmon* Movants nonetheless submit this brief so that the case will be ready for submission should this Court or the Supreme Court determine that jurisdiction properly lies in this Court.

public policy considerations all favor a reading that looks to whether the interest claimed by a proposed intervenor would be adequately represented by parties that existed (or, at the very least, had already sought admission) at the time the proposed intervenor filed its motion to intervene.

### A.   Rule 24's plain language requires reversal.

First, *Galmon* Movants' opening brief recounted the procedural history below to demonstrate that Plaintiffs and the Secretary of State were the only existing parties on February 6, 2024, when *Galmon* Movants moved to intervene. *See* Opening Br. at 6, 16. Indeed, no other proposed party had even sought intervention by that date. *See id.* at 6, 17. Unable to quarrel with these simple facts, Plaintiffs profess ignorance and confusion about what "existing parties" could mean, given that the phrase is not a defined term in the Federal Rules. *See* Pls.' Br. at 26. But "we begin with the assumption that the words were meant to express their ordinary meaning." *Bouchikhi v. Holder*, 676 F.3d 173, 177 (5th Cir 2012); *see also Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 362 (5th Cir. 1995) ("[I]f language is plain and unambiguous, it must be given effect." (quoting William N. Eskridge, Jr. & Philip P. Frickey, *Legislation*

707 (2d ed. 1995))). Plaintiffs' argument works only if "existing parties" means its antonym, "hypothetical future potential parties." When *Galmon* Movants moved to intervene, and again when they moved for reconsideration of the denial of their motion to intervene, the liability-phase party status of *Robinson* Intervenors was entirely speculative and hypothetical, which is grammatically incompatible with Rule 24's use of the present participle "existing."

Similarly, Rule 24 requires a court to grant intervention to a qualified proposed party who "claims" an interest in the matter. Fed. R. Civ. P. 24(a)(2). This present-tense verb is consistent with a reading that the analysis turns on party-status when the claim is made—that is, when the intervenors' motion is filed. If no "existing parties" represent an interest in litigation at the time that a proposed intervenor formally "claims" that interest by docketing its motion, then, according to Rule 24(a), the court "must permit" intervention where other prerequisites are satisfied. *Id.* These common terms are not ambiguous.

## B.    All relevant judicial precedent favors reversal.

Next, in their opening brief, *Galmon* Movants scoured the Federal Reporter and Federal Supplement for other instances where a proposed

party was denied intervention due to adequate representation by a later-moving intervenor, and they found *zero* such examples. *See* Opening Br. at 18. Indeed, cases addressing this issue explicitly warn against the district court's approach. *See, e.g.,* *Friends of the Boundary Waters Wilderness v. U.S. Army Corps of Eng'rs*, No. 19-cv-2493 (PJS/LIB), 2020 WL 6262376, at *12 (D. Minn. Apr. 9, 2020) ("Plaintiffs fail to highlight any case in which a Court denied a motion to intervene based on a proposed intervenor's interest arguably being adequately protected by another proposed intervenor."). Apparently unable to identify a *single case* adopting or endorsing the approach taken below, Plaintiffs retreat to citing abstract pronouncements about flexible intervention inquiries and district court discretion that are several steps removed from the controversy here. *See* Pls.' Br. at 26–27.

Plaintiffs quote *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996), for the principle that the intervention-of-right inquiry must be "flexible," focusing "on the particular facts and circumstances surrounding each application" and "measured by a practical rather than technical yardstick." Pls.' Br. at 27. *Edwards* had nothing to do with the "existing parties" language in Rule 24, but it did reverse the district

court's technical and inflexible denial of intervention of right, *see* 78 F.3d at 989, further illustrating the Fifth Circuit's "broad policy favoring intervention," *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at \*4 (5th Cir. Mar. 22, 2022); *see also La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) ("*LUPE*") ("Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Meanwhile, none of the three cases that Plaintiffs cite in favor of district court discretion—*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486 (5th Cir. 2012); *Edwards v. Cass County*, 919 F.2d 273 (5th Cir. 1990), and *Enlow v. Tishomingo County*, 962 F.2d 501 (5th Cir. 1992), *see* Pls.' Br. at 26—so much as mention intervention, let alone hold that district courts are free to override Rule 24's "existing parties" analysis. Instead, these cases merely observe that some trial practice details not at issue here are left to the trial court's judgment. *Smith & Fuller*, for example, held that a district court had discretion to accept a third-party affidavit to establish the reasonability of a requested discovery sanction. *See* 685 F.3d at 491. *Cass County* held that a district

court had discretion to reject a summary judgment motion filed "on the eve of trial three months after the expiration of a deadline." 919 F.2d at 275. And *Enlow* held that a district court had discretion to accept a "second summary judgment motion [that] followed discovery and amendment of the pleadings" after having adjudicated an earlier summary judgment motion prior to discovery. 962 F.2d at 507. Because this appeal does not challenge the admission of a third-party affidavit or the filing of a summary judgment motion, these cases are irrelevant.

The undisputed truism that district courts have discretion to manage certain elements of their docket does not license them to do just anything. Specifically, it does not permit courts to conflate permissive intervention—the denial of which is reviewed for abuse of discretion— with intervention of right—the denial of which is reviewed de novo. *See Edwards*, 78 F.3d at 995. This case concerns the latter, and the Rule governing intervention of right explicitly *divests* district courts of discretion. *See* Fed. R. Civ. P. 24(a) (identifying when "the court must permit" intervention). Nothing in Rule 24(a) provided the court below

with discretion to consider whether a later-moving proposed intervenor could substitute for *Galmon* Movants in defending S.B. 8.[2]

## C.    Administrative and equitable considerations favor reversal.

With no refuge in text or precedent, Plaintiffs are left to argue policy. In their view, expecting the district court to process intervention motions in the order they were filed—precisely the way that courts across the country do every day—would be "absurd." Pls.' Br. at 27. But Plaintiffs' efforts to explain the purported absurdity are confused and wrong.

First, Plaintiffs fear that orderly processing "would permit a district court to deny admission if seconds before the court admits another party in a separate docket entry." *Id.* at 28. It is unclear which element of this

---

[2] Besides, "[a] district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Klick v. Cenikor Found.*, 94 F.4th 362, 368 (5th Cir. 2024) (quoting *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005)). The court below abused any discretion it could have had in both ways. Its complete disregard for Rule 24's "existing parties" language reflected an erroneous view of the law, and the court's curt explanation of why *Robinson* Intervenors could litigate in place of *Galmon* Movants— ostensibly because *Robinson* Intervenors were "lead" plaintiffs in Middle District litigation, ROA.872–73—reflected a clearly erroneous assessment of the evidence and was itself untethered to Rule 24. *See* Opening Br. at 12–14, 23–24 (explaining deficiencies).

hypothetical Plaintiffs find objectionable. The fact that a district court might grant some motions to intervene and deny others? That part is normal (and indeed it occurred below). The fact that a district court might resolve pending motions in quick succession? That, too, seems entirely commonplace and unobjectionable. The fact that a district court might sequence its resolution of intervention motions in a manner resulting in the exclusion of an otherwise deserving party? That is precisely the absurd result that *Galmon* Movants seek to correct.

Second, Plaintiffs fear that orderly processing "would not allow a district court to issue multiple orders admitting some parties and denying admission to others in the same docket entry." *Id.* That is wrong, and the error reveals a fundamental misunderstanding of the issues in this appeal. Indeed, *Galmon* Movants' opening brief collected examples where courts correctly resolved multiple intervention motions in a single order—the very practice that Plaintiffs appear keen to preserve. *See, e.g.*, *Garfield County v. Biden*, No. 4:22-cv-00059-DN-PK, 2023 WL 2561539, at *4 (D. Utah March 17, 2023) (granting two motions to intervene and denying six others); *Mo. Coal. for Env't Found. v. Wheeler*, No. 2:19-cv-4215-NKL, 2020 WL 2331201, at *9 (W.D. Mo. May 11, 2020) (granting

one motion to intervene and denying another). The problem with the orders below is not that they adjudicated in one docket entry multiple motions to intervene (or multiple motions for reconsideration); it is that they resolved *Galmon* Movants' motions incorrectly.

Plaintiffs' final argument is that, as a technical matter, the opinions below appeared to discuss *Robinson* Intervenors' motions before discussing *Galmon* Movants' motions, though, Plaintiffs emphasize, "[m]erely to walk through this mechanical exercise of sifting the precise order of paragraphs in judicial opinions" demonstrates its absurdity. Pls.' Br. at 28. Yes, it does. As Plaintiffs seem to recognize, identifying "existing parties" based on when motions to intervene were resolved—as opposed to when they were filed—would needlessly complicate the analysis of single orders resolving multiple motions to intervene because each motion is resolved simultaneously when the omnibus order is docketed. Moreover, such orders may not follow any internal linear chronology—for example, the order below determined on page 6 that *Robinson* Intervenors were adequately represented in liability proceedings by the State, but the order did not grant intervention to the State until page 8. *See* ROA.871, ROA.873.

These problems are avoided by an approach that analyzes existing parties as of the time that a motion to intervene is filed. The most straightforward application of Rule 24's text would require the admission of all proposed intervenors whose interests are not adequately represented by parties then-existing when the motions to intervene are docketed. If multiple otherwise-qualified proposed intervenors claim overlapping interests, then the court should grant party-status to each movant and (if it so chooses) attach "reasonable conditions"—such as limitations on duplicative briefing—to facilitate "efficient conduct of the proceedings." *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997) (quoting Fed. R. Civ. P. 24(a) advisory committee's note to 1966 amendment).

Alternatively, a district court's ability to deny intervention where one movant's interests are adequately represented by another movant must be limited to instances where the denied movant identified an interest that was already subject to an existing claim by an earlier movant. *See, e.g.*, *Garfield County*, 2023 WL 2561539, at *5–6; *Wheeler*, 2020 WL 2331201, at *9. Arranging proposed parties in an orderly queue based on filing date will not pose any of the administrability problems

that Plaintiffs identify. Docket sheets will eliminate any ambiguity regarding the filing sequence of different motions to intervene, with no need for "sifting the precise order of paragraphs in judicial opinions." Pls.' Br. at 28. And all prospective litigants will know to expect a uniform, predictable standard: an "interest relating to the property or transaction that is the subject of the action" may supply a basis for intervention of right unless another party or proposed party has already claimed that interest. Fed. R. Civ. P. 24(a)(2).

## II. *Galmon* Movants satisfied the remaining requirements for intervention as of right.

Despite its failure to recognize that *Robinson* Intervenors were not "existing parties" for purposes of the Rule 24 analysis, the district court correctly determined that *Galmon* Movants satisfy the other requirements for intervention of right: (1) their motion to intervene was timely; (2) they claimed an interest related to the property or transaction that is the subject of the action; (3) they are so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and (4) their interests were inadequately represented by Plaintiffs and Defendants. *See* ROA.869, ROA.872, ROA.2042.

### A.    *Galmon* Movants' motion was timely.

Plaintiffs do not contest the timeliness of *Galmon* Movants' motion to intervene.

### B.    *Galmon* Movants claimed significant interests in this action.

As the district court recognized, *Galmon* Movants' direct interest in the configuration of Louisiana's congressional map satisfies the second requirement for intervention as of right. ROA.869, ROA.872. This element does not require movants to identify a property interest, pecuniary interest, or even a legally enforceable interest. *Texas v. United States*, 805 F.3d 653, 658–59 (5th Cir. 2015). Rather, "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.*

Notably, Rule 24(a)'s "interest requirement may be judged by a more lenient standard if the case involves a public interest question." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citation omitted) (reversing denial of intervention). Because redistricting is a quintessential matter of public interest, that lenient standard applies here. Indeed, affected voters are regularly granted intervention in

redistricting challenges. *See, e.g.*, *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993) (en banc); *cf. League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011).

*Galmon* Movants identified two interests in this action. *First*, as courts across the country have recognized, proposed intervenors maintain significant protectable interests in defending the outcomes of proceedings in which they participated. *See, e.g.*, *Prete v. Bradbury*, 438 F.3d 949, 954–56 (9th Cir. 2006) (holding that supporters of successful ballot measure maintained sufficient interest in defending measure's legality); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397–98 (9th Cir. 1995) (concluding that involvement in administrative process constituted sufficient interest in action that could affect result reached by that process); *McQuilken v. A & R Dev. Corp.*, 510 F. Supp. 797, 803 (E.D. Pa. 1981) (granting intervention of right where lawsuit "could impair [intervenor]'s ability to protect their legal interest in obtaining full compliance with the judgment" achieved in prior litigation). Four *Galmon* Movants (Mr. Galmon, Ms. Hart, Mr. Henderson, and Mr. Howard) thus have an interest in defending S.B. 8, which was enacted as

a direct result of these individuals' successful efforts in the Middle District litigation.[3] Plaintiffs' protestation that S.B. 8 was enacted before the Middle District entered final judgment misses the point. *See* Pls.' Br. at 16. S.B. 8 was enacted to remedy *Galmon* Movants' voting rights injury adjudicated in that litigation, and so *Galmon* Movants' legal interest evolved from seeking a Section 2-compliant map from the judiciary to defending the Section 2-compliant map they had received from the Legislature.

---

[3] This Court must take *Galmon* Movants' factual allegations as true, *LUPE*, 29 F.4th at 305, and, moreover, this fact is beyond dispute, *see* ROA.79–81 (introducing Middle District litigation as predicate for new map); *Robinson v. Ardoin*, 86 F.4th 574, 601 (5th Cir. 2023) (remanding to provide the Legislature "an opportunity to consider a new map now that we have affirmed the district court's conclusion that the Plaintiffs have a likelihood of success on the merits"); *Gov. Jeff Landry Opens First Special Session on Court Ordered Redistricting,* Off. of the Governor (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-special-session-on-court-ordered-redistricting (urging Legislature to "heed the instructions of the Court" and adopt new map); La. Senate, Senate Comm. on Senate & Governmental Affairs, 51st Extraordinary Sess., Day 2, at 32:05–33:14 (Jan. 16, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/01/011 624SG2 (S.B. 8 sponsor explaining that the map "respond[s] appropriately to the ongoing federal Voting Rights Act case in the Middle District of Louisiana" and reminding committee members that "we are here now because of the federal court's order that we have a first opportunity to act [and the] court's order that we must have two majority-Black voting age population districts").

*Second*, Mr. Henderson, Mr. Howard, and Dr. Williams have interests in defending S.B. 8 because that map directly affects their voting power. *See City of Boerne*, 659 F.3d at 434–35 ("Registered voters have a sufficiently substantial interest to intervene in an action challenging the voting district in which the voters are registered." (alterations adopted) (*quoting Johnson v. Mortham*, 915 F. Supp. 1529, 1536 (N.D. Fla.1995))). As Plaintiffs explained in the district court proceedings below, S.B. 8 unpacked Mr. Henderson's district, CD-2, to allow for the creation of a second Black-opportunity district, *see* ROA.597, curing the unlawful vote dilution that he suffered under Louisiana's previous congressional districting plan, *see Thornburg v. Gingles*, 478 U.S. 30, 46 n.11 (1986) (recognizing "[d]ilution of racial minority group voting strength may be caused by . . . the concentration of blacks into districts where they constitute an excessive majority"); *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 817–18 (M.D. La. 2022) (finding all individual plaintiffs in Middle District litigation, including Mr. Henderson and Mr. Howard, had standing under Section 2 because they resided in a district alleged to have been "packed or cracked"), *vacated on other grounds*, 86 F.4th 574 (2023). S.B. 8 reassigned Mr. Howard, in

turn, from the previously packed CD-2 to CD-6, the new Black-opportunity district. Surely, he has an interest in preserving the opportunities newly afforded by that district, particularly after he filed a lawsuit to create it. And because Dr. Williams also resides in CD-6, he, too, maintains a strong interest in defending the electoral opportunities that the new configuration provides.

Plaintiffs' accusation that *Galmon* Movants assert "generalized" grievances, Pls.' Br. at 16, is remarkably oblivious both to the standard on intervention and to Plaintiffs' own standing deficiencies. While *Galmon* Movants are not required to prove "standing" as proposed intervenor-defendants, the interests they assert are particularized. They—unlike all Louisiana voters generally—either litigated the Section 2 case that specifically resulted in S.B. 8's enactment, reside in the new district that S.B. 8 created to comply with Section 2's obligations, or *both* litigated the predicate action *and* seek to preserve a material change in their electoral opportunities. Plaintiffs, in contrast, are haphazardly drawn from all across the state, and most Plaintiffs do not (and cannot) make any claim that their assigned district was racially gerrymandered. *See* ROA.76–77.

Next, Plaintiffs argue without citation that "individuals do not have legally protectable rights to be included in majority-Black districts." Pls. Br. at 16. But Section 2, of course, does vest Black voters with a right to districts where they may elect candidates of their choice when relevant conditions are present. *See Allen v. Milligan*, 599 U.S. 1, 17–19 (2023). Plaintiffs contest whether those conditions are present in Louisiana, which is merely to say they disagree with *Galmon* Movants on the merits of the underlying litigation—the question of whether Louisiana's legislature had good reason to believe that Section 2 required the creation of Black-opportunity districts was at the heart of the liability-phase dispute below. The mere fact that Plaintiffs sought to extinguish *Galmon* Movants' interests in maintaining those districts does not support a finding at the intervention stage that those interests never existed.

Finally, Plaintiffs argue that Dr. Williams's interest in his own district can be addressed at the remedial phase. Pls.' Br. at 17–18. But Plaintiffs neglect to mention that Dr. Williams inexplicably remains excluded from the remedial phase. *See* ROA.3677. Even if he were able to vindicate his interests at the remedial phase—a result that Plaintiffs are sure to stridently oppose—that opportunity is irrelevant to whether

Dr. Williams possesses an interest in defending his current district's shape. Particularly where *Galmon* Movants contend that S.B. 8 prioritizes the Legislature's political goals, *see* ROA.942–46—which may not receive similar emphasis in a judicially ordered remedial plan—the liability phase reflects critical terrain where Dr. Williams's interests will be vindicated or defeated.

## C.    The disposition of this case may impair *Galmon* Movants' significant interests.

To satisfy the third element, proposed intervenors "need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *LUPE* , 29 F.4th at 307; *see also Edwards*, 78 F.3d at 1005 (recognizing this "generous measure of impairment favors would-be intervenors"). Plaintiffs turn this standard upside-down to argue that if *Galmon* Movants remain excluded from the liability phase, there is a possibility that their interests could still be vindicated at the remedial phase. *See* Pls.' Br. at 19. That is simply not the test.

If Plaintiffs are successful in achieving their stated aims of dismantling CD-6, *see* ROA.135, they will eviscerate the victory for Black voters that four *Galmon* Movants secured after 22 months of litigation in the Middle District. Speculation about whether *Galmon* Movants could

ultimately mitigate that damage at a remedial phase is irrelevant to the legal inquiry, which Plaintiffs never bother to cite. *See* Pls.' Br. at 19–20. *Galmon* Movants would fully vindicate their interests by succeeding at the liability phase—avoiding the need for a remedial phase altogether— and so their exclusion from liability proceedings creates the sufficient possibility that their interests will be impaired or impeded.

### D. Existing parties did not adequately represent *Galmon* Movants' interests.

For the adequate-representation analysis, proposed intervenors "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *LUPE*, 29 F.4th at 307–08 (quoting *Texas*, 805 F.3d at 661). The Supreme Court has explained that "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

The relevant parties for purposes of the adequate representation analysis are Plaintiffs and the Secretary of State—the existing parties when *Galmon* Movants moved to intervene. Neither party adequately represented *Galmon* Movants' interests; Plaintiffs' interests are directly adverse to *Galmon* Movants', and the Secretary—who steadfastly

opposed *Galmon* Movants' efforts to secure a Black-opportunity district in the Middle District litigation—refused to provide any substantive defense of S.B. 8. *See* Opening Br. at 10. That should end the inquiry.

The district court avoided addressing the Secretary's non-participation by reasoning that "the Secretary of State is sued in her official capacity, thus the State through the Attorney General is implicated as well," and, due to the Attorney General's constitutional oath, "the State must defend SB8." *See* ROA.870. This zig-zagging analysis overcomplicates matters. The Secretary is not represented by the Attorney General and did not claim any constitutional obligation to defend S.B. 8. Nor is there any expectation or obligation for the State to participate in litigation when a redistricting plan is challenged. *See, e.g.*, *Allen*, 599 U.S. 1 (Alabama Secretary of State—but not the State of Alabama—litigating redistricting action). While the State may choose to seek intervention, as it ultimately did below, that has nothing to do with whether the Secretary was likely to adequately represent *Galmon* Movants' interest.[4]

---

[4] Indeed, the State's motion to intervene affirmatively represented that the State was not adequately represented by the Secretary because they

Even if the State could somehow retroactively be deemed an
"existing party" at the time *Galmon* Movants sought intervention due to
the State's relation to the Secretary—and again, neither the district court
nor Plaintiffs have identified any legal basis for that characterization—
it was never likely that the State would adequately represent *Galmon*
Movants. The State's institutional interests in this litigation depart
substantially from the personal interests asserted by *Galmon* Movants,
and the nature of the State's interests prevented it from providing a
complete defense of S.B. 8.

Contrary to Plaintiffs' assertions, courts have made clear that the
mere invocation of a presumption of adequate representation cannot
defeat intervention wherever a governmental defendant and proposed
intervenors each seek to defend a challenged policy. *See, e.g.*, *Trbovich*,
404 U.S. at 538–39 (reversing denial of intervention where government's
interest in representing the public could leave proposed intervenors with
"a valid complaint" about the government's litigation approach); *LUPE*,

---

were pursuing different interests. *See* ROA.764 ("The Defendant
Secretary of State's objective is in the orderly implementation of
whatever election rules are in force. The Attorney General is a separately
elected official tasked specifically with defending the laws and sovereign
interests of the State of Louisiana.").

29 F.4th at 308–09 (reversing denial of intervention where proposed intervenors had political interests that the State could not pursue in good faith); *Miller*, 2022 WL 851782, at *2–3 (reversing denial of intervention where proposed intervenor intended to make "a meaningfully different argument" than the government in defense of challenged program); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (reversing denial of intervention where proposed intervenors highlighted arguments the government could not make); *Texas*, 805 F.3d at 662–63 (reversing denial of intervention where government's institutional interests differed from proposed intervenors' personal interests in defending challenged policy); *Brumfield*, 749 F.3d at 345–46 (reversing denial of intervention where government had institutional interests in litigation not shared by proposed intervenors and proposed intervenors offered "real and legitimate additional or contrary arguments" in defense of the challenged program); *Sierra Club*, 18 F.3d at 1207–08 (reversing denial of intervention where proposed intervenors' parochial interests were distinct from government's

obligation to "represent the broad public interest," establishing "the minimal burden on the movants to satisfy this requirement").[5]

Here, there was never a doubt that the State's interests and arguments "may" diverge from *Galmon* Movants'. *Trbovich*, 404 U.S. at 538 n.10. *Galmon* Movants have an interest in vindicating this Court's affirmance of the Middle District's determination that Section 2 requires Louisiana to create two Black-opportunity districts; the State aggressively litigated against *Galmon* Movants at every step of that litigation. *Galmon* Movants have personal interests in preserving district lines that place them in Black-opportunity districts; the State's general interest in achieving a lawful districting plan does not include a similar

---

[5] *See also, e.g.*, *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties."); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996–97 (10th Cir. 2009) (reversing denial of intervention and emphasizing showing of inadequate representation "is easily made when the party upon which the intervenor must rely is the government" (quoting *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001))); *Chiglo v. City of Preston*, 104 F.3d 185, 187–88 (8th Cir. 1997) ("If the citizen stands to gain or lose from the litigation in a way different from the public at large, the *parens patriae* would not be expected to represent him."); *Fresno County v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) (reversing denial of intervention where state defendant did not pursue all arguments offered by intervenor and government defendant adopted its position "only reluctantly after [intervenor] brought a law suit against it").

interest in the placement of any individual voters. *Galmon* Movants have interests in aggressively defending S.B. 8 with every available argument, including with evidence that S.B. 8's departure from maximal compactness reflected intra-Republican Party goals and feuds; the State's officially apolitical nature was likely to—and did—render it unwilling to defend the Legislature's raw political favoritism for some congressional incumbents over others. *See* ROA.1126–32 (State completely ignoring issue in opposition to Plaintiffs' motion for preliminary injunction); Opening Br. at 10 (recounting that at trial, the State presented only ten minutes of video excerpts from the legislative record before resting its case). And *Galmon* Movants have interests in discrediting each expert Plaintiffs use to attack S.B. 8; because the State had retained in the ongoing Middle District litigation the *same expert* that Plaintiffs presented with their motion for preliminary injunction, the State was likely to be conflicted out of attacking his credibility—and did, in fact, muzzle any criticism. *See* ROA.1126–32. In fact, the State's inadequate representation is conclusively resolved by the notice it filed in this appeal asking the Court *not to vacate* the injunction of the very map that the State purports to be defending. *See* Joint Notice Regarding

Appellee Br. at 2, ECF No. 84. Far from representing *Galmon* Movants' interest in vindicating S.B. 8, the State's institutional interest in "finality" appear to trump its commitment to preserving S.B. 8's second Black-opportunity district. *Id.* In sum, the district court correctly recognized that the State was not likely to adequately represent private intervenors' interests when the court reversed its liability-phase denial of *Robinson* Intervenors' motion to intervene. ROA.2042. It erred, however, by failing to reverse that denial as to *Galmon* Movants.

The question whether *Galmon* Movants were adequately represented by *Robinson* Intervenors remains inappropriate because *Robinson* Intervenors were not "existing parties" for purposes of Rule 24. Even briefly indulging a counterfactual where *Robinson* Intervenors were existing parties, however, reversal would still be required. Plaintiffs conspicuously do not dispute *Galmon* Movants' arguments that *Robinson* Intervenors did not represent *Galmon* Movants in the Middle District litigation—the district court's sole reason for the denial of *Galmon* Movants' motion to intervene. *See* Opening Br. at 21–24.

Instead, Plaintiffs respond only to *Galmon* Movants' explanation that *Galmon* Movants reside in different parts of Louisiana than

*Robinson* Intervenors, and only to speculate without any evidence or insight that *Galmon* Movants and *Robinson* Intervenors "coordinated" the filing of complaints in the Middle District litigation and that "the Galmons had to recruit a Texas voter who had just moved to Natchitoches and belatedly registered there." Pls.' Br. at 24. For all of their conspiracy theories, Plaintiffs never contest the fact that Dr. Williams and Mr. Henderson have interests in preserving S.B. 8's empowerment of Black communities in Natchitoches and Orleans Parishes, respectively, that are not represented by any of the *Robinson* Intervenors.

## III. This appeal is not moot.

Plaintiffs offer two mootness arguments, both of which are frivolous. First, they argue that "the appeal is moot because the district court has since overturned the Orders underlying the appeal." Pls.' Br. at 11. That is disingenuous. The district court reversed its denial of intervention only as to the remedial phase, and only as to Mr. Galmon, Ms. Hart, Mr. Henderson, and Mr. Howard. ROA.3677. All *Galmon* Movants remain excluded from the liability phase, and Dr. Williams remains excluded from any phase. Until the denials of intervention are reversed *in full*, the appeal is not moot.

Second, Plaintiffs argue that "since the time [*Galmon* Movants] appealed, the district court has issued a final determination of liability; that part of the case is over." Pls.' Br. at 12. Here, Plaintiffs omit that the district court determined liability in favor of *Plaintiffs*—aggravating, rather than eliminating, *Galmon* Movants' injury. Plaintiffs offer no authority for the notion that an adverse merits judgment can moot an interlocutory appeal of an order denying intervention, which would contradict bedrock principles of mootness. "Mootness doctrine 'addresses whether an intervening circumstance has deprived the [movant] of a personal stake in the outcome of the lawsuit.'" *Moore v. Harper*, 600 U.S. 1, 14 (2023) (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022)). Here, no intervening circumstance has deprived *Galmon* Movants of the personal interests they have asserted in the outcome of the liability phase below. Rather, *Galmon* Movants' interests in fully participating in proceedings that determine the constitutionality of S.B. 8 remain just as acute today as when they moved for intervention in February.[6]

---

[6] Plaintiffs' multi-page digression on standing to appeal the underlying injunction is irrelevant, *see* Pls.' Br. at 12–14; *Galmon* Movants appeal the denial of their intervention.

## CONCLUSION

This Court should reverse the district court's denial of intervention, vacate the district court orders that were entered without *Galmon* Movants' participation, and remand so that all *Galmon* Movants may defend their interests in all phases of this litigation.

Dated: September 6, 2024

J.E. Cullens, Jr.
Andrée Matherne Cullens
S. Layne Lee
WALTERS, THOMAS, CULLENS, LLC
12345 Perkins Road
Building One
Baton Rouge, Louisiana 70810
(225) 236-3636

Respectfully submitted,

By: */s/ Abha Khanna*
Abha Khanna
ELIAS LAW GROUP LLP
1700 Seventh Avenue
Suite 2100
Seattle, Washington 98101
(206) 656-0177

Lalitha D. Madduri
Jacob D. Shelly
Qizhou Ge
Daniel Cohen
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW
Suite 400
Washington, D.C. 20002
(202) 968-4490

*Counsel for* Galmon *Movants-Appellants*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that: (1) all required privacy redactions have been made in compliance with 5th Cir. Rule 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

*/s/ Abha Khanna*
Abha Khanna

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for Appellants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Abha Khanna*
Abha Khanna

## CERTIFICATE OF COMPLIANCE

This document contains 5,754 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f), and is in compliance with the Court's April 16, 2024, Directive, ECF No. 59. This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Abha Khanna*
Abha Khanna